# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ENDY NMI GAMBOA and
MELBA CASTILLO GAMBOA,

            Debtors.

Case No.  A04-00216-DMD
Chapter 7

**Filed On
8/8/08**

## MEMORANDUM ON DISCHARGE

The debtor filed a motion to reopen this case for the purpose of obtaining an order that an omitted creditor's claim was discharged. Office Tech, the omitted creditor, has filed an opposition to the motion and objects to the discharge of its claim. The facts are uncontroverted. Rather than requiring the filing of an adversary proceeding, the parties have agreed to submit their dispute on briefs. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This court has jurisdiction over the dispute in accordance with 28 U.S.C. § 1334(b) and the district court's order of reference. I find in favor of Office Tech.

Background

Debtor Endy Gamboa became a copier salesman with Office Tech in June of 2003. He signed an "Employee Non-Compete Agreement" with Office Tech on June 23, 2003. The agreement prohibited Gamboa from working for any competitor of Office Tech's for a period of one year after his termination of employment from Office Tech. In the event of a breach, the agreement provided for the issuance of an injunction and other remedies including substantial liquidated damages. Gamboa also signed an "Addendum to Non

Competition Agreement" on June 23, 2003.  The addendum provided for a monetary penalty of $5,000.00 if Gamboa breached the non-compete provisions.

Gamboa and his wife filed for chapter 7 relief on February 27, 2004.  He did not list Office Tech as a creditor.  There were no assets in his case.  No distributions to creditors were made.  No claims bar date was set and creditors were advised not to file claims.  The debtors' discharge was entered June 23, 2004.  The trustee filed a report of no distribution (a "no asset" report) on October 7, 2004, and the case was closed December 10, 2004.

After his discharge was entered, Gamboa continued working for Office Tech. He received performance awards from Office Tech in October and November of 2004, and June and July of 2005.  In May of 2006, almost two years after his discharge had been entered, Gamboa left Office Tech  and took the position of sales manager with a competitor, A-1 Copy Systems.  On April 7, 2007, Office Tech filed a state court action against Gamboa seeking liquidated damages in the sum of $443,823.00 for breach of the covenant not to compete.   Gamboa filed a motion to reopen this bankruptcy case, and now seeks a determination from this court that Office Tech's claim has been discharged.


Analysis

Gamboa contends Office Tech's claims under the non-compete agreement have been discharged in this bankruptcy case.  He relies on Ninth Circuit authority to support this contention.  The Ninth Circuit has held that the discharge of claims in no-asset, no claim bar date chapter 7 cases is controlled by the provisions of 11 U.S.C. § 523(a)(3), rather than by

2

whether a creditor's claim was scheduled by the debtor.[1]  The two cases on which Gamboa relies, however, are distinguishable from the situation present here.  In *Beezley*, the debtor failed to schedule a default judgment which California Land Title Company had obtained against him three years before the bankruptcy petition was filed.[2]  Land Title didn't receive notice of the  bankruptcy filing before the debtor received his discharge and the case was closed in November, 1987.  In January of 1990, Beezley moved to reopen his bankruptcy case so he could amend his schedules by adding Land Title as a creditor.  This relief was denied by the Bankruptcy Court.  The Bankruptcy Appellate Panel and the Ninth Circuit affirmed.

The Ninth Circuit held that, after a no asset, no claim bar chapter 7 case was closed, the discharge of a debt was unaffected by scheduling.[3]  Rather, the dischargeability of the debt was controlled by 11 U.S.C. § 523(a)(3).  If the omitted debt were of a type covered by § 523(a)(3)(A), it would have already been discharged.  Alternatively, if the omitted debt were one falling under § 523(a)(3)(B), *e.g.*, a debt for fraud, breach of fiduciary duty, larceny or embezzlement, or willful and malicious injury, then it would not have been discharged.[4]  As Judge O'Scannlain noted, in his concurring opinion, the entire thrust of

---

[1] *White v. Nielsen (In re Nielsen)*, 383 F.3d 922 (9th Cir. 2004); *Beezley v. Calif. Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir. 1993).

[2] 994 F.2d at 1434.

[3] *Id.*

[4] *Id.*

3

§523(a)(3) "is to protect the creditor's right to file a proof of claim, . . . '[h]owever, in a case with no assets to distribute the right to file a proof of claim is meaningless and worthless.'"[5]

The Ninth Circuit affirmed this position in *Nielsen*.[6]  In that case, creditor Sharon White had helped the debtor get a business loan by pledging her own certificate of deposit as security.  The debtor's obligation to While was his largest debt.  When he filed chapter 7, he listed White's debt on his schedules, but failed to include her on his matrix.  As in *Beezley*, the bankruptcy case was closed as a no asset, no claim bar case.  White didn't receive notice of the bankruptcy until the case was closed.  She sued the debtor for revocation of discharge on the theory that he had intended to omit her from the matrix.[7]  She also argued that her debt had been excepted from discharge under § 523(a)(2)(A).  The bankruptcy court ruled in favor of the debtor, and the Ninth Circuit affirmed.  It cited Judge O'Scannlain's observations in *Beezley* with approval , and concluded that a claim, "if dischargeable, did not become non-dischargeable because of a failure to list it, since the failure to list could not affect the timely filing of a proof of claim."[8]  Such claims were discharged, along with scheduled claims, in no asset, no bar date chapter 7 cases.[9]

---

[5] *Beezley*, 994 F.2d 1436 (O'Scannalin, concurring), *citing In re Mendiola*, 99 B.R. 864, 867 (Bankr. N.D. Ill. 1989).

[6] 383 F.3d 922.

[7] *Id.* at 924.

[8] *Id.* at 927.

[9] *Id.*

4

*Beezley* and *Neilsen* both involved situations where a debtor had omitted a known claim from his schedules or matrix.  The issue present here is whether Office Tech had a claim at the time Gamboa filed his petition.  If so, its claim would have been discharged.[10]  For bankruptcy purposes, a debt is a liability on a claim.[11]  Claims are very broadly defined, and include "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[12] However, in order for a claim to be dischargeable, a claimant must have some "fair contemplation" of pre-petition conduct on the part of the debtor that would give rise to liability and damages.[13]   The "fair contemplation" test is based on the premise that, notwithstanding the broad definition of a "claim" in the Bankruptcy Code, "nothing in the legislative history or Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights existed."[14]  This test provides that damages "based on pre-petition conduct that can be fairly contemplated by the parties at the time of [d]ebtor's bankruptcy

---

[10] 11 U.S.C. § 727(b).

[11] 11 U.S.C. § 101(12).

[12] 11 U.S.C. § 101(5).

[13] *Zilog, Inc. v. Corning (In re Zilog, Inc.),* 450 F.3d 996, 1000-1001 (9th Cir. 2006); *Calif. Dept. of Health Services v. Jensen (In re Jensen),* 995 F.2d 925, 930-31 (9th Cir. 1993).

[14] *Jensen*, 994 F.2d at 930 (citation omitted).

5

are claims under the [Bankruptcy] Code."[15]  In *Jensen*, the Ninth Circuit applied the fair

contemplation test to analyze an environmental clean up claim under CERCLA.  However,

the court subsequently noted, in *Zilog*, that the fair contemplation test has been applied to "a

range of non-environmental claims" and it saw no reason why the test couldn't be applied

to sex discrimination claims.[16]

Under the fair contemplation test, I find that Office Tech's claim arose post-

petition.  Office Tech had no basis for seeking to enforce the non-compete agreement when

Gamboa's petition was filed.  At that point in time, he hadn't yet breached the non-compete

agreement.  In fact, no breach occurred until two years after he received his discharge.  And,

in the interim, he received performance awards from Office Tech.  Although the non-

compete agreement gave Office Tech remedies for Gamboa's breach, there was no pre-

petition conduct on Gamboa's part to indicate that a breach of this agreement had, or would,

occur.

The Ninth Circuit has also held that "a claim arises, for purposes of discharge

in bankruptcy, at the time of the events giving rise to the claim, not at the time plaintiff is

first able to file suit on the claim."[17]  In *O'Loghlin*,[18] an employee working for the

municipality of Orange County suffered injuries in the course of her work in 1992 and 1993.

---

[15] *Id.*

[16] *Zilog*, 450 F.3d at 1000-1001.

[17] *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000).

[18] *Id.*

6

The County filed a chapter 9 petition in December, 1994. The employee contended the County violated provisions of the Americans with Disabilities Act ("ADA"),[19] three times after she had been injured. The first alleged violation occurred prior to the filing of the County's petition; the second occurred post-petition but before discharge; and the third occurred after the County's discharge had been entered in 1996.

The employee filed suit against the County in 1997. The County contended any liability to the employee had been discharged in its bankruptcy. The Ninth Circuit agreed that the employee's claim for alleged pre-petition ADA violations had been discharged.[20] However, it found that the employee's two claims for post-petition ADA violations had not been discharged, even though the employee's right to seek remedies under the ADA had arisen pre-petition.

A similar analysis can be made in the instant case. Office Tech had rights under the non-compete agreement at the time Gamboa filed his petition, but had no basis to enforce those rights until Gamboa terminated his employment, post-discharge, and went to work for a competitor. Had Gamboa retired from Office Tech's employ, or if he had found work in another field that didn't compete with Office Tech's, no claim based on the non-compete agreement could ever have been asserted.

Conclusion

---

[19] 42 U.S.C. §§ 12101-12213.

[20] *Id.* at 874-75.

7

Office Tech's claim against Gamboa, for breach of the employee non-compete agreement, has not been discharged in this bankruptcy case under 11 U.S.C. § 523(a)(3). Office Tech's claim arose when Gamboa terminated his employment, post-discharge, and went to work for a competitor. Accordingly, the discharge injunction found in 11 U.S.C. § 524 does not preclude Office Tech from pursuing its rights in the non-compete agreement under state law.

An order and judgment will be entered consistent with this memorandum. This bankruptcy case will thereafter be closed.

DATED:    August 7, 2008

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge


Serve:    C. Christianson, Esq.
M. Jungreis, Esq.
H. Gazaway, Esq.
U.S. Trustee
8/8/08

8